v. United States of America. We'll hear first from Mr. McConnell. Thank you. Good morning. Good morning. You have a big stack there. I do. That's the issue of fact in here, Judge. Okay. May it please the Court. My name is Sean A. McConnell. I represent the plaintiff appellants Rogelio and Maria Barron on behalf of their deceased son, Anthony Barron. And as I mentioned, this is a court, the district court dismissed this case on summary judgment grounds. And so I think it's important to talk about the standard of what defeats a summary judgment motion, an issue of fact. And I think in this case, we have an issue of fact as to whether or not a duty applies to the actions by the federal government in this case, and an issue of fact as to whether or not there was negligence. The case generally concerns— Okay, so let me ask this question because you've jumped into the negligence issue. The holding of the court below clearly is that this is a premises liability case, not a negligence case, and that under Texas law, if you have premises liability, there is no negligence claim. Do you agree that that is Texas law? I agree, and perhaps I'm using the wrong umbrella when I talk about negligence, but this is very much a premises liability claim, and I think that— So are you not arguing negligent undertaking? I am, and— Because that's a separate thing. That's the court's position, and I just did not see that in the Texas case law where they treat negligent undertaking is here and premises liability is here, and there's no kind of combined umbrella at times. And I think there is in the cases that I cited where they talk about— So are you arguing negligent undertaking? I am, Your Honor, yes. Not just negligence, not just premises, but you're saying that the duty is created through negligent undertaking? Correct, correct, but the umbrella is premises liability. I don't think I can approach an undertaking claim without mentioning that this occurred on a premise, and I think that's what the Texas case law says. But it's not just a premises. It's not just the duty of the premises. It's because there was an undertaking. Is that—and you believe you've pled, pleaded the undertaking? Because the district court said no, you didn't plead it. Yes, yes, and I think the district court was mistaken about that. And even if I didn't use the right words, I think that's where the court went a little too far in terms of you didn't use the right words, and I think the Department of Justice is trying to say the same thing. So if I'm understanding, your position today is that your pleading made sufficient negligent-sounding noises, regardless of whether it is negligence or negligent undertaking, to plead negligent undertaking for purposes of maybe an exception to premises liability. Correct, Judge, and I believe that that's— and if you look at the McManus case, the Fifth Circuit case, it's very similar. The plaintiff alleged a breach of warranty and just didn't cite the right law. They were citing California law, but some of their allegations tracked Texas law. But isn't this about more than law? You specifically alleged a claim for negligence. You specifically alleged a claim for negligence per se, and then you specifically alleged in the alternative a claim for premises liability. So how is this like McManus? Because if I tracked the Texas case law that talked about undertaking in the premises liability context— so that's why I used the word premises, because my concern was if I don't use it, they're going to— and that was the government's argument from the beginning as well. We have—and that's the scaffolding case that they cite a lot about. It was a worksite accident, and the plaintiff proved throughout trial, this is negligence, this is negligence, this is negligence. They won, and the Supreme Court said, no, this is really premises. But if you're so concerned about this undertaking claim, then why wait until your response to the second government's motion for summary judgment to say it for the first time, given that you were on your third amended complaint, you'd been through a prior summary judgment motion. If it's so important and you didn't want to lose it, why wait until that moment? Well, Judge, it's simply not true, despite what the Department of Justice says, that this was raised for the first time in the second summary judgment motion. This was raised on the first summary judgment motion, what I call the blueprint case for us, the Wilson v. Department. You cited Wilson in the first summary judgment and went through the facts and how they were analogous? Yes, yes. So for the government not to say, this is a huge surprise to us that you would do this, I just feel it's disingenuous. And then to say that this was a complete surprise, we need new discovery. The facts of the undertaking come from the government's own witnesses. They say, we went out, we started to inspect roads, we expected people to rely on our judgment. We expected people to abide by road blockages. If you were to find that it was sufficient, you're pleading, because it went through the facts of what a negligent undertaking would be, assuming arguendo, should we send this case to the Texas Supreme Court to determine whether, in fact, there is such a claim under Texas law? I think that I would say, as a fail-safe, maybe or yes, because I do think that the negligent undertaking with natural conditions hasn't quite been fleshed out the way it is in this case. It's not clear whether Texas does or does not recognize this in this factual scenario. Would you say that that's true? That's probably true only because the best case we have is the Wilson case that my partner handled, and it's settled. So we don't know exactly how the court – but basically the court's saying, you have a shot here. Here are the types of things that can be developed, and then you may have the claim. It hasn't foreclosed it, but it hasn't definitely recognized it at the Supreme Court level. I would agree. I would agree. We have the appeals case in Houston where it's Methodist Hospital versus Texas Women's University, and it goes through very similar facts, and there's no landowner exception, as the Department of Justice seems to say in this case that, hey, when you're a landowner, regardless of whether or not you do an undertaking, you're not liable. That's not what the case out of Houston says, and it goes through the actions. Would you be able to tell us in your live pleading what were the facts that you think established this, would raise this sufficiently? Yes, Your Honor. So you need one of those finders after all. I do. This is why we had open book tests in law school. Okay. If you prefer, you could do it on your rebuttal. I don't want to take your time if you have another argument that you want to make. Well, I have it here. The security forces had the duty and responsibility to determine if water on low water crossings reached or could reach a level that created an unreasonable risk of wash offs or other danger, had the duty and responsibility to close, block, and otherwise restrict access to the low water crossings. Between 6 a.m. and 7 a.m., Fort Sam Houston Endor Camp Bullis security officers inspected and then determined that the Camp Bullis low water crossing should be closed due to water conditions. Camp Bullis personnel wrongfully unlocked and opened the gate. Anthony Barron reasonably believed that the road was open to civilian workers and or reasonably believed that the road was determined to be a suitable and or safe alternative route. So I believe that I go through the elements of what an undertaking is. And if you look at the cases cited by the Department of Justice in terms of, well, you're raising a new argument at summary judgment level. Their best case by is a discrimination case where in response to the summary judgment motion, the plaintiff suddenly said, oh, and by the way, I was a breastfeeding mom and I wasn't given the opportunity to take breaks to do that. So that's discrimination as well. And the court said, wait a minute. This is not only an entire different argument now. It's an entire different predicates that have to be shown and an entirely different type of relief. Why don't you raise a new argument on summary judgment as long as it's the same facts in response to the summary judgment that are pleaded? That's part of my point, Judge, because this is a sophisticated. This is Department of Justice. Regardless of whether it's sophisticated lawyers or not, you can raise in response to summary judgment arguments that are supported by the facts once the motion is made, right? I agree, Judge, yes. But the question is whether or not you pleaded factually and legally sufficient, although we have a case that says you don't have to say 1983 when you're raising a 1983. You don't have to name the legal theory by which you're proceeding or state the law. You just have to give the factual predicate in a way that someone could understand. So I don't know whether someone could understand or not. I'm not prejudging that. But, Judge, I believe that we did. If you look at the live plead. So you're saying that you went through the elements of an undertaking claim without ever using the word undertaking. That's right, Judge. And you're equating the statement that the government had a duty here with the allegation that the government undertook a duty. Yes, but there's more allegations about what the government did as part of the undertaking in terms of closing the roads, what roads they determined should be closed. And also the facts bear a lot of this out as well in terms of what the government did that day and then what the government expects to be done on a day like that. A whole regulatory framework to inspect roads, to issue weather warnings, to close roads, and to have people obey the road closures. And then also in the deposition testimony, the security forces officers said, we expect base personnel to rely on what we're doing. We know it better than them. And, in fact, there was someone on the base that was told to cross a water crossing that was flooded, and he said, gosh, I can't believe they made me do that, but I trusted them. And I think that that's all part of the elements and at least a factual dispute as to whether or not there was an undertaking. Was the undertaking unlocking the gate? That was part of it. And the undertaking is I expected that gate to be locked, and this court found that that was a mandatory duty. I expected that gate to be locked because I didn't want anyone to get to that water crossing until I had the opportunity to check it. That's what one security officer says. The other security officer says, I wasn't even going to go over there because I assumed it was blocked. I never go over there. But somebody unlocked the gate. That's right, and the government can't identify who that was. We just know that the only people that could have done it were employees of the government. And so that's an undertaking to unlock the gate as opposed to just leaving things be. It's not a naturally just occurring. Is that your argument? Right. Part of it is the undertaking. There was an overall undertaking to keep the base safe, and then they go ahead and someone goes ahead and unlocks this gate is part of that entire framework and actions. But all of those conditions would be conditions of the premises. So in a premises liability claim, those factors would be taken into account typically, and here under Texas law, the natural accumulation doctrine defeats entirely the premises liability claim. Why should not the natural accumulation doctrine defeat a negligent undertaking claim? Because it never has, and the courts don't say that it should. And this Wilson case is an example of that. City of Waco v. Kieron as well talks about ordinarily natural conditions that happen on a premises a landowner is not liable except if they undertake a duty to make the premises safe. And so a lot of the cases cited by me go through the various arguments that the plaintiffs tried to make in a premises case and the City of Waco case talks about that where it's, well, you may be undertaking or a landowner's actions to make natural conditions safe could be a claim, but here the plaintiff doesn't reach the threshold. So does the undertaking have to be specifically related to trying to deal with the natural accumulation? Yes. Okay. Well, yes in these types of cases, yes. Sometimes is it just premises safety in general? There are some cases, and that's the UMC case v. Walker, where a natural condition just happens in a public park and the park owners do nothing. And the court says if they do nothing, there is no duty of care. And if you look at the briefing on that case, it's specific. A point raised by the appellee is, hey, the plaintiff never alleged that we undertook any type of duty here, so we are not liable, and the court agreed. Thank you. You just have time for rebuttal, sir. Yes, thank you. We're going to hear from Mr. Green now. Good morning, Your Honors, and may it please the Court, Robert Green for the United States. Your Honors, I'd like to focus on three independent, substantive reasons why a negligent undertaking claim isn't available or viable on these facts as a matter of Texas law, most of which have already been alluded to in the arguments this morning. The first reason is that under the framework set out by the Texas Supreme Court in the United Scaffolding case and the Occidental case in 2016 and 2017, the facts at issue here sound in premises liability. And the Texas Supreme Court said in United Scaffolding that when the true nature of a claim is determined to be one for premises liability, a plaintiff can't transform it into something else by pleading it as general negligence. But those are general negligence pleadings. Do you have any case where the negligent undertaking was weighed against the natural accumulation doctrine? To my reading of Texas law, there's not yet such a case. So I think you're right that I'm not aware of any Texas case that weighs a negligent undertaking claim against the natural accumulation doctrine. So maybe we should send one there to let them determine how those two things interact since they haven't yet? Well, I think that that leads into the second substantive point that I'd like to speak to, which is the affirmative conduct that plaintiff appellants allege makes up the undertaking in this case. And they cited in their argument now the manner in which base personnel inspected crossings or determinations they made about road closures on the day of the flood. Those are all acts that the district court already determined to be discretionary functions under the FTCA, which means that there's not subject matter jurisdiction for a negligent undertaking claim arising from that conduct. So to the extent that as a matter of state law, that conduct could support a negligent undertaking claim, I don't think it would be useful to certify a question to the Texas Supreme Court as to a claim for which there wouldn't be subject matter jurisdiction under the FTCA. But isn't the prior holding of this court that it wasn't discretionary and in fact it was mandatory to have that gate closed? And the undertaking would be that something that was mandatory was undone by an affirmative act unlocking the gate. So a couple of responses to that, Your Honor. So first of all, the issue that was raised in the first appeal in this case was limited to the question of whether the United States had discretion not to close the gate at the subject crossing. Plaintiff appellants didn't challenge the discretionary function findings of the district court with respect to any of the other conduct at issue. For example, the signs that were displayed at various places at the base or the manner in which crossings were inspected on the date of the flood. And so because those discretionary function findings have never been challenged, and in fact they're correct as a matter of law, that extinguishes a negligent undertaking claim based on that activity. Now with respect to whether opening the gate was an affirmative act, it's undisputed in this case that the gate stood open for at least 30 minutes before Anthony Barron arrived at it. And under Texas law, that means that because the injury wasn't produced by the affirmative act of opening the gate, but rather the static condition of the open gate leading to the flooded road, that this sounds in premises liability. And in two recent cases, the Elephant Insurance Company versus Kenyon, in the first reserve management case from just last year, the Texas Supreme Court has reaffirmed that a negligent undertaking duty can't arise from an omission, the failure to act, such as the failure to close a gate. But it can arise from the affirmative act of opening the gate, where the gate's supposed to be closed. Well, I'm not sure that's right, Your Honor, because under the United Scaffolding case, if the allegation is one of nonfeasance, that the landowner failed to take some action to provide a warning or to make safe a dangerous condition, that's a claim that sounds in premises liability, not in other categories of negligence. And the other point that I would make... That might be the point that the Texas Supreme Court ought to help give us guidance on, shouldn't it? Well, the next point that I would make about that, Your Honor, is that part of the reason the district court found plaintiff appellants hadn't satisfied the law of the place requirement under the FTCA is because they identified a federal regulation that, assuming it applied to this gate, required the gate to be closed. But what they didn't do is identify any state law requirement to close the gate. And part of the reason they couldn't do that is because there's not evidence in the summary judgment record to suggest that the decision about closing the gate was one that was related to the weather conditions on Camp Bullis. The only information that's known in the summary judgment record was that the gate was left open for some indeterminate period of time. There's not evidence that it was opened in connection with the flooding that day on Camp Bullis. And under Texas law, the duty to use water in the context of an undertaking is limited to the scope of the undertaking. There's not anything to indicate that the management of the gate at the subject crossing was part of an undertaking related to flood control. And as the district court noted, the record appears to reflect the opposite, that this gate was used to control access to the impact area in the firing range in the northwest. And it just so happened to be at a low water mark? Yes, but actually was quite distant along the road from the point of that crossing. It was the last gate adjacent to that crossing, but not one immediately at the crossing itself, and one that also controlled access to a water treatment plant on the base. So part of, I think, the point of the district court's futility analysis is that there's nothing that connects the management of that gate to a flood-related undertaking, and there's not any analogy in the law of the place to the federal regulatory requirement that the gate be closed. And I think that's consistent with the testimony at deposition of the security officers, Goodloe and Rogers, that when they went out that day to inspect the crossings, Officer Goodloe didn't prioritize the gate at the subject crossing. Because he expected it to be closed and locked? Right, for reasons unrelated to the weather conditions or flooding on the base. That day, but it could be related to the fact that it was at a low water crossing, and it could be related to the water treatment plant, and it could be related to the firing range, and it could have a multiplicity of purposes, but including to protect people accessing that road at a low water point. Correct? I think that's right, Your Honor, but I think that that's still a problem for the FTCA law of the place requirement, because plaintiffs have the burden to show if they're going to rely on a federal regulation to establish substantive liability, that there is, in fact, some analogous state law duty to perform that same conduct, and they haven't done so here. Next, Your Honors, I'd like to speak to the procedural background of this case, which I think was alluded to earlier during Appellant's argument. Of course, the parties focused their arguments on the viability of this hypothetical negligent undertaking claim, but no negligent undertaking claim was set out in the live pleading in plaintiff's third amended complaint, and in their summary judgment oppositions. When you say that, are you saying because it doesn't use the words? Because it doesn't use the words and also because, you know, while some of the factual allegations could be used in support of that claim, that wasn't the focus of the pleading, it wasn't the focus of the way discovery was framed, and there are some aspects of negligent undertaking liability that aren't addressed in the pleading and that also weren't addressed in discovery. The issue of any aggravation of harm caused by the undertaking is something specific implicated by negligent undertaking liability that didn't come up under a premises liability or a general negligence framing. And I'd go back to united scaffolding, that, you know, the obligation of parties when a case implicates a premises liability duty is to identify which mode of recovery their claim fits into. These are separate and distinct modes of discovery under Texas law, and they aren't interchangeable and can't be— they're not amorphous such that creative pleading can transition one into the other. Plaintiff appellants in their summary judgment oppositions began to make negligent undertaking type arguments, but even then they never sought leave in the district court to actually raise a negligent undertaking claim. And under this court's precedence, the Bayh versus MGM Resorts case cited in our briefing, raising an argument in a summary judgment opposition isn't sufficient to place a new theory of recovery before a district court. But is it a new theory of recovery, or is it a subset of a certain kind of premises liability claim? So I think two cases from the Texas Supreme Court answer that question very clearly. The united scaffolding case distinguishes on the basis of nonfeasance, premises liability, versus malfeasance, general negligence. And then more recently, the united—I'm sorry, the first reserve management case from just last year reaffirms that under Texas law, a negligent undertaking duty can't arise from an omission. It can't arise from the nonfeasance that's the essence of a premises liability claim. So I think that does situate a negligent undertaking within that dichotomy. What are they missing? They directly allege that the government had a duty to restrict access to the water crossing, that they did not do so, and that Mr. Barron relied on them doing so to be sure that the crossing was safe. Why isn't that sufficient? Well, I think the natural accumulation doctrine raises problems about the reliance. But you don't have to plead—anticipate a defense in your pleading and plead around it. I mean, why isn't that a prima facie case for negligent undertaking? Well, I think because as a matter of Texas law, the natural accumulation doctrine undermines the reliance element. But don't they have to wait until you raise it and then—I mean, I teach civil procedure, and you don't have to anticipate that. I just taught this. You don't have to anticipate the defenses. And, in fact, maybe you can if you want to give facts about them, but you certainly shouldn't give them the other side ideas. Right. And I think that's right, Your Honor. I think the United Scaffolding case would say that the facts that are alleged sound in premises liability, not in the sort of malfeasance theory that could support a general negligence order. But United Scaffolding is not a negligent undertaking case, is it? No, it's not a negligent undertaking case. The elephant insurance company versus Kenyon and the first reserve management cases from the Texas Supreme Court in 2022 and 2023 are negligent undertaking cases. But the big issue would be whether negligent undertaking is an exception to the premises liability, even in the face of a natural accumulation doctrine. Yes. And that's a legal issue, isn't it? I'm sorry, I didn't— that maybe we shouldn't decide in the first instance. Well, yes, and, Your Honor, I think the Wilson case and the city of Waco versus Kirwan cases, as you've alluded to during Appellant's argument, kind of point to a little bit of an unknown area within Texas law about how negligent undertaking and natural accumulation interact with each other in that context. Now, I'll point out plaintiff appellants haven't identified any case where a Texas court has used a negligent undertaking claim or has affirmed negligent undertaking liability of a landowner for an injury caused to a plaintiff by a natural accumulation on the landowner's land. And that's the context that we have here. But I go back to that it wouldn't be useful to certify that question here because the affirmative conduct that's required under Texas law to support a negligent undertaking is discretionary function, as the district court has already determined and as plaintiff appellants haven't challenged. And, in fact, on remand, plaintiff appellants affirmatively stated to the district court that they did not intend to pursue a claim based on that affirmative conduct. That's the section of the summary judgment argument that's quoted at page 4 of Appley's brief. Plaintiff appellants affirming to the district court that the only conduct that they're pursuing their claim on is their argument that the gate should have been closed when, in fact, it was left open. And why isn't that sufficient? Because there's not a connection between the opening of that gate and an undertaking related to flood safety. That's not supported. Now we're in a circle. Okay. So, Your Honors, I think under the MGM versus, I'm sorry, the Bayh versus MGM resorts case, that explains why it's not proper in a summary judgment opposition to articulate or to try to raise a new theory of liability, even if that theory could arise from some of the facts that were alleged in a live pleading. And two other cases that I'd point to, the Little versus Liquid Air Corp case discussed in our briefing and another one that will come back to me in a moment, talk about the utility of a summary judgment procedure being undermined if that's what plaintiff appellants were permitted to do. If they could wait until the deadline to amend a pleading had passed, wait until discovery closed, wait until a summary judgment motion was filed, and then try to sidestep a defense to the claim that was pleaded by reforming their facts into some other claim that hadn't been raised previously. The Liquid versus Little Air Corp case says that that's not permissible and that that's prejudicial to a defendant, and that's the situation that we have in this case. Your Honor, I'd like to turn back to the law of the place requirement under the FTCA just to make a fundamental point. Plaintiff appellants rely on an allegation about the violation of a federal regulation, but substantive liability under the FTCA doesn't arise from federal law. Substantive liability arises from the law of the place. This court said in the Coleman versus United States case that violations of federal law just aren't relevant to substantive liability under the FTCA, which means that in order for the regulation to have any purpose at the substantive liability phase, plaintiffs need to identify some state law obligation to perform the same conduct required by the regulation. Is this not a federal enclave, this base? I believe it is federal property, Your Honor, but regardless of that, under the FTCA, substantive liability has to be based on state law. And so the obligation would be to identify state law that required the specific conduct required by the federal regulation. And only then could the regulation provide some evidence about the standard of care with respect to the now-alleged undertaking at issue. And plaintiff appellants haven't done that, and so for that additional reason, their FTCA claim fails at the law of the place requirement. Your Honor, for procedural reasons, a negligent undertaking claim never properly came before the district court. There's no need for this court to consider the viability of a negligent undertaking claim that wasn't properly raised. For that reason alone, the court can affirm the judgment of the district court, and additionally, that judgment should be affirmed for three independent substantive reasons. Under United Scaffolding and under First Reserve Management, this case sounds in premises liability as a matter of Texas law. Texas courts have made a policy judgment within the area of premises liability that natural accumulations don't create liability for a landowner. And this court shouldn't permit plaintiffs to sidestep that policy judgment and violate United Scaffolding by pleading a premises liability claim into some other theory of relief. Second, plaintiff appellants can't satisfy the FTCA's law of the place requirement, and so their FTCA claim fails at that stage as well. And finally, the only nondiscretionary conduct that they base their alleged undertaking on is an omission. The failure to close the gate at the subject crossing, and an omission that they contend failed to warn Anthony Barron about the flooded road on the other side. But in the Kenyon case, the Texas Supreme Court said that an omission and the failure to give a safety warning can't support imposing a negligent undertaking duty. So, Your Honors, for all of those reasons, we'd ask that the judgment of the district court be affirmed. And subject to any further questions, I'll give back the remainder of my time. Thank you, Mr. Green. We have your argument. Mr. McConnell, you save time for rebuttal. Thank you, Your Honor. I think when it comes to exploring the scope of the undertaking, I don't think anything prevents the courts from looking at the totality of the circumstances. Even if the plaintiff can only allege a specific violation of a federal duty, the courts are still entitled to look at the entire framework to see what duty applies. And I'm citing for that the Alexander v. United States, 605 F2D 828, where the plaintiff alleged that the United States was engaged in a joint enterprise with a munitions factory, a private owner. And the court said, since liability under the FTCA is governed by state law, we must first determine the relationship which existed between the United States and this private company and the duties that arose from the relationship. And then the court goes on to explore the contract between the United States and the entity, regulations, not only looking at things that are mandatory, but the totality of the framework. And that's what also the Longino case, it's a district court case. Sorry, not that one. The Denunziato case is a district court case where an inmate committed suicide. And the court is giving its trial opinion, and it's going through everything that the U.S., the government employees, were supposed to do in this type of situation. Not just the mandatory things, although it did find that the plaintiff does need to prove that the mandatory duty was violated and that that caused injury, but goes on to explore what it means to be a suicidal inmate, what qualifies, what the duties of the nursing staff are if someone is suicidal. So the point is that the court can look at the entire regulatory framework and actions to determine if there was an undertaking or a duty that arose. And then the question is, can plaintiff prove negligence based on the failure to lock the gate, which I believe we can. And this issue of the only thing that the plaintiff can allege in type of situations are commissions versus omissions, that's not what the Methodist Hospital case says, because out of Houston, it goes through everything that the hospital failed to do and promised to do. So I think the most pressing issue on appeal is whether or not, as Judge Ash referenced, whether or not the intent is so controlling that it precludes plaintiffs from going forward the intent of the mandatory duty. And there's not a single case that says it does. In fact, that has never come up. And so- Has the Methodist Hospital, does the time run on that one for review? I believe that's a 2006 case. Oh, that's not the most recent one. Okay, thank you. So, Your Honors, I believe that there is an issue of fact as to whether or not there was an undertaking under Texas premises liability law, and an issue of fact as to whether or not there was negligence in that undertaking. Thank you. Thank you, Mr. McConnell. We have your argument. We appreciate the arguments on both sides, and the case is submitted. The court will take a 10-minute recess.